IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GABRIEL JENNINGS, | ) | |
|     Petitioner, | ) | Civil Action No. 08-322 Erie |
| | ) | |
| v. | ) | Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| WARDEN QUINTANA, | ) | |
|     Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied.

### II.    REPORT

Petitioner, Gabriel Jennings, is a federal inmate. At the time he commenced this proceeding, he was incarcerated at the Federal Correctional Institution McKean, which is located within this district. Presently before the Court is his petition for a writ of habeas corpus, which he has filed pursuant to 28 U.S.C. § 2241. [ECF No. 4]. He challenges his 1991 conviction in the U.S. District Court for the Eastern District of Pennsylvania for arson, in violation of 18 U.S.C. § 844(i). He argues that in light of the Supreme Court's decision in Jones v. United States, 529 U.S. 848 (2000), the conduct for which he was convicted is no longer criminal. As explained below, Jennings has failed to demonstrate that he is actually innocent under Jones because that decision did not decriminalize the conduct at issue in this case. Therefore, the petition should be denied.

#### A.    Relevant Statutory Background

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v.

1

Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "Two federal statutes, 28 U.S.C. §§ 2241 & 2255, confer federal jurisdiction over habeas petitions filed by federal inmates." Id. "The 'core' habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the ground that his predicate sentence or conviction is improper or invalid." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010). That type of habeas action is brought before the district court that sentenced the prisoner by way of a motion filed under 28 U.S.C. § 2255, which permits a federal prisoner to challenge his judgment of sentence "upon the ground that [it] was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" In contrast, § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," McGee, 627 F.3d at 935, such as, for example, the way in which the Bureau of Prisons is computing his sentence. See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990).

"On rare occasions it is possible for federal prisoners to attack their convictions and sentence pursuant to § 2241, as opposed to § 2255." Brian R. Means, FEDERAL HABEAS MANUAL § 1:29 (June 2012). Section 2255, in what is commonly referred to as its "savings clause" or "safety valve," provides that "[a]n application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to [§ 2255], shall not be entertained if it appears that the applicant has failed to apply for relief by motion [to vacate sentence pursuant to § 2255], to the court which sentenced him, or that such court has denied him relief, *unless it appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*" 28 U.S.C. § 2255(e) (emphasis added). Thus, a § 2241 petition attacking custody resulting from a federally-imposed sentence may be entertained if the petitioner establishes that the § 2255 remedy is "inadequate or ineffective."

2

The U.S. Court of Appeals for the Third Circuit and other courts of appeals, including the U.S. Court of Appeals for the Fifth Circuit,[1] have found the remedy under § 2255 to be inadequate or ineffective only in "extremely limited circumstances." Pack v. Yusuff, 218 F.3d 448, 452 (5th Cir. 2000). In the Third Circuit, the seminal case on the application of § 2255's "savings clause" is In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997). Dorsainvil was convicted, *inter alia*, of using a gun in connection with a drug crime. He was so convicted notwithstanding that he did not "use" the gun but the gun was merely present in the car from which the drugs were to be bought. After he had exhausted his appeals and litigated a § 2255 motion, the Supreme Court in Bailey v. United States, 516 U.S. 137 (1995) construed the criminal statute under which Dorsainvil was convicted to exclude from the ambit of the statute mere presence of a gun at a drug crime, thus arguably rendering him actually innocent of the crime of using a gun in connection with a drug offense.

Post Bailey, Dorsainvil filed an application with the Third Circuit Court in which he sought leave to file in the district court a second or successive § 2255 motion. The court denied his request because he did not come within the gatekeeping requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[2] However, the court concluded that Dorsainvil had established the inadequacy of § 2255 so as to bring his claim in a § 2241 petition:

> Dorsainvil argues that the safety-valve provision of § 2255 covers his situation because he seeks to challenge his conviction on a second § 2255 petition based on an intervening decision by the Supreme Court. A similar case "involv[ing] the availability of collateral relief from a federal criminal conviction based upon an intervening change in substantive law" came before the Supreme Court in Davis v. United States, 417 U.S. 333, 334 (1974).

---

[1] As set forth below, Jennings previously presented his Jones claim to the U.S. District Court for the Western District of Louisiana and then on appeal to the Fifth Circuit Court.

[2] Dorsainvil was barred from filing a second or successive § 2255 motion because he could not satisfy AEDPA's requirements for such a motion: *i.e.*, his application was not based on "newly discovered evidence," and the Supreme Court's decision in Bailey, which he was claiming decriminalized the conduct for which he had been convicted, did not constitute "a new rule of *constitutional law* . . . that was previously unavailable." Dorsainvil, 119 F.3d at 247-48 (quoting 28 U.S.C. § 2255 (now at § 2255(h)) (emphasis added)).

3

> In that case, the Court stated that a Supreme Court decision interpreting a criminal statute that resulted in the imprisonment of one whose conduct was not prohibited by law "presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id. at 346 (internal quotations omitted). The Court held that "if [petitioner's] contention is well taken, then [his] conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and present(s) exceptional circumstances that justify collateral relief under § 2255." Id. at 346-47 (internal quotations omitted); see also United States v. Addonizio, 442 U.S. 178, 186-87, (1979) (discussing Davis and observing that a refusal to have vacated his sentence "would surely have been a 'complete miscarriage of justice,' since the conviction and sentence were no longer lawful").
>
> The decision in Davis that § 2255 was broad enough to cover a defendant imprisoned for a crime that an intervening decision negates does not govern Dorsainvil's motion before us only because he has brought his claim for relief on a second § 2255 motion [subject to the gatekeeping provisions of AEDPA]. In the earlier part of this opinion, we construed the AEDPA to preclude our certification of a second § 2255 motion that relied on the intervening decision in Bailey as a basis for certification. Thus, Dorsainvil does not have and, because of the circumstance that he was convicted for a violation of § 924(c)(1) before the Bailey decision, never had an opportunity to challenge his conviction as inconsistent with the Supreme Court's interpretation of § 924(c)(1). If, as the Supreme Court stated in Davis, it is a "complete miscarriage of justice" to punish a defendant for an act that the law does not make criminal, thereby warranting resort to the collateral remedy afforded by § 2255, it must follow that it is the same "complete miscarriage of justice" when the AEDPA amendment to § 2255 makes that collateral remedy unavailable. In that unusual circumstance, the remedy afforded by § 2255 is "inadequate or ineffective to test the legality of [Dorsainvil's] detention."
>
> There is no reason why § 2241 would not be available under these circumstances, provided of course that Dorsainvil could make the showing necessary to invoke habeas relief, an issue for the district court.

Dorsainvil, 119 F.3d at 250-51.

The Third Circuit Court subsequently described the narrow holding of Dorsainvil as follows: "§ 2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed *such that the conduct of which the prisoner was convicted is deemed not to be criminal*; and (3) the prisoner

4

cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law." Trenkler v. Pugh, 83 F.App'x 468, 470 (3d Cir. 2003) (emphasis added).

As discussed below, Respondent does not dispute that Jennings has satisfied the first and third Dorsainvil factors. It is the second factor, sometimes described as the "actual innocence" factor, that is at issue in this case. See, e.g., Reyes-Requena v. United States, 243 F.3d 893, 904 (5th Cir. 2001) ("To capture the idea that the incarceration of one whose conduct is not criminal inherently results in a complete miscarriage of justice, most circuits have included an actual innocence component in their savings clause tests. See, e.g., ... Dorsainvil, 119 F.3d at 251 ('prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate')." (internal quotations and additional citations omitted)).

### B. Relevant Factual and Procedural Background

On March 13, 1990, Jennings and 13 co-defendants were charged in a 92-count indictment with conspiracy to distribute cocaine base ("crack"), a RICO offense, operating a continuing criminal enterprise ("CCE"), one count of arson, and numerous drug distribution and firearm offenses. The indictment alleged that Jennings was the leader of a crack cocaine organization that distributed crack and other drugs in Philadelphia from approximately July 1988 through February 1989. The arson count (Count 30) charged that, on or around December 29, 1988, Jennings and other members of the organization used fire and explosives with the intent to damage or destroy "a building used in an activity affecting interstate commerce, that is, 5801 Brush Road, which was used in the conspiracy to distribute cocaine base charged in Count One of the Indictment," in violation of 18 U.S.C. § 844(i). [ECF No. 46 at 5]. Nathaniel Gore (also known as "Reds") resided at 5801 Brush Road. Gore was charged with making a house available for drug distribution, in violation of 21 U.S.C. § 856(a)(2).

5

A jury convicted Jennings of the conspiracy count, the RICO offense, the CCE count, the arson count, and many of the distribution and firearm counts. The Eastern District Court imposed a total within-guideline sentence of 432 months: 372 months for the drug-related offenses, and a consecutive 60-month sentence for the § 924(c) offenses.

Gore was tried separately from Jennings and the other co-defendants. A jury acquitted him of the crime of making a house available for drug distribution, in violation of 21 U.S.C. § 856(a)(2).

The Third Circuit Court affirmed Jennings' convictions and sentences on July 16, 1992. In 1997, Jennings filed a § 2255 motion in which he challenged his firearm convictions on the basis of Bailey. In a Memorandum and Order dated June 3, 1997, the Eastern District Court granted the § 2255 motion in part and denied it in part, such that all of Jennings' firearms convictions and sentences were vacated. The court denied his remaining claims.

Several years later, on May 22, 2000, the Supreme Court decided Jones v. United States, 529 U.S. 848 (2000), the case upon which Jennings now relies in support of his contention that his arson conviction should be vacated. The arson statute that Jennings was convicted under, 18 U.S.C. § 844(i), reads in relevant part:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property *used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce* shall be imprisoned for [sets forth term and fines].

(Emphasis added). In Jones the Supreme Court considered whether § 844(i) covers property occupied and used by its owner not for any commercial venture, but as a private residence.

The Supreme Court began its analysis in Jones by explaining:

> We previously construed § 844(i) in Russell v. United States, 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985), and there held that § 844(i) applies to a building "used as rental property," ibid. The petitioner-defendant in Russell had unsuccessfully attempted to set fire to a two-unit apartment building he owned. He earned rental income from the

6

> property and "treated it as business property for tax purposes." Id., at 859, 105 S.Ct. 2455. Our decision stated as the dispositive fact: "Petitioner was renting his apartment building to tenants at the time he attempted to destroy it by fire." Id., at 862, 105 S.Ct. 2455. It followed from that fact, the Russell opinion concluded, that "[t]he property was ... being used in an activity affecting commerce within the meaning of § 844(i)." Ibid.
>
> We now confront a question that was not before the Court in Russell: Does § 844(i) cover property occupied and used by its owner not for any commercial venture, but as a private residence. Is such a dwelling place, in the words of § 844(i), "used in ... any activity affecting ... commerce"?
>
> In support of its argument that § 844(i) reaches the arson of an owner-occupied private residence, the Government relies principally on the breadth of the statutory term "affecting ... commerce," see Brief for United States 10, 16-17, words that, when unqualified, signal Congress' intent to invoke its full authority under the Commerce Clause. But § 844(i) contains the qualifying words "used in" a commerce-affecting activity. The key word is "used." "Congress did not define the crime described in § 844(i) as the explosion of a building whose damage or destruction might affect interstate commerce...." United States v. Mennuti, 639 F.2d 107, 110 (C.A.2 1981) (Friendly, J.). Congress "require[d] that the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce." Ibid. The proper inquiry, we agree, "is into the function of the building itself, and then a determination of whether that function affects interstate commerce." United States v. Ryan, 9 F.3d 660, 675 (C.A.8 1993) (Arnold, C. J., concurring in part and dissenting in part).

Jones, 529 U.S. at 853-55 (footnotes omitted).

In support of its argument that § 844(i) reached the arson of the owner-occupied private residence at issue in Jones, the Government identified three activities of the home that purportedly affected interstate commerce: (1) the home was used to secure a mortgage from an out-of-state lender; (2) the home was used to obtain a casualty insurance policy from an out-of-state firm; (3) the home was connected to out-of-state sources of natural gas. Id. at 855. The Supreme Court was not persuaded by the Government's argument, explaining:

> The Government correctly observes that § 844(i) excludes no particular type of building (it covers "any building"); the provision does, however, require that the building be "used" in an activity affecting commerce. That qualification is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce. Although "variously defined," the word "use," in legislation as in conversation, ordinarily signifies "active employment." Bailey v. United

7

> States, 516 U.S. 137, 143, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); see also Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187, 115 S.Ct. 788, 130 L.Ed.2d 682 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning.").
>
> It surely is not the common perception that a private, owner-occupied residence is "used" in the "activity" of receiving natural gas, a mortgage, or an insurance policy. Cf. Bailey, 516 U.S., at 145, 116 S.Ct. 501 (interpreting the word "use," as it appears in 18 U.S.C. § 924(c)(1), to mean active employment of a firearm and rejecting the Government's argument that a gun is "used" whenever its presence "protect[s] drugs" or "embolden[s]" a drug dealer). The Government does not allege that the Indiana residence involved in this case served as a home office or the locus of any commercial undertaking. The home's only "active employment," so far as the record reveals, was for the everyday living of Jones's cousin and his family.
>
> Our decision in Russell does not warrant a less "use"-centered reading of § 844(i). In that case, which involved the arson of property rented out by its owner, see supra, at 1909, the Court referred to the recognized distinction between legislation limited to activities "in commerce" and legislation invoking Congress' full power over activity substantially "affecting ... commerce." 471 U.S., at 859-860, and n. 4, 105 S.Ct. 2455. The Russell opinion went on to observe, however, that "[b]y its terms," § 844(i) applies only to "property that is 'used' in an 'activity' that affects commerce." Id., at 862, 105 S.Ct. 2455. "The rental of real estate," the Court then stated, "is unquestionably such an activity." Ibid. Here, as earlier emphasized, the owner used the property as his home, the center of his family life. He did not use the residence in any trade or business.
>
> - - -
>
> We conclude that § 844(i) is not soundly read to make virtually every arson in the country a federal offense. We hold that the provision covers only property currently used in commerce or in an activity affecting commerce. The home owned and occupied by petitioner Jones's cousin was not so used – it was a dwelling place used for everyday family living. As we read § 844(i), Congress left cases of this genre to the law enforcement authorities of the States.

Id. at 855-56, 859 (footnotes omitted).

Several months after the Supreme Court issued its decision in Jones, Jennings filed with the Third Circuit Court an application for leave to file a second or successive § 2255 motion. [ECF No. 15-2 at 2-4, Resp't Ex. 1, docket sheet in In Re: Jennings, No. 00-4257]. He raised issues related to his arson conviction, as well as several of his other convictions. On February 21, 2001, the Third Circuit Court issued an order in which it held, in relevant part:

8

> Jennings' application for certification to file a second or successive motion to vacate sentence under 28 U.S.C. Section 2255 is therefore denied without prejudice to his right to file a petition for a writ of habeas corpus pursuant to 28 U.S.C. Section 2241 to challenge his conviction under 18 U.S.C. Section 844(i), in light of Jones v. United States, 120 S.Ct. 1904 (2000), in the District Court in the district of his confinement. See In re Dorsainvil, 119 F.3d 245, 247 (3d Cir. 1997). We express no opinion on the merits of petitioner's Jones claim[.]

[ECF No. 15-2 at 4, Resp't Ex. 1, docket sheet in In Re: Jennings, No. 00-4257].

In accordance with the Third Circuit Court's directive, on June 25, 2001, Jennings (who at the time was incarcerated in the U.S. Penitentiary in Pollock, Louisiana) filed with the U.S. District Court for the Western District of Louisiana a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [ECF No. 15-2 at 7-52, Resp't Ex. 2, § 2241 habeas petition filed at Docket No. 01-cv-1194 (W.D. La.)]. In that habeas petition, Jennings raised numerous claims, including a claim based upon Jones. Specifically, in "Ground One" of his habeas petition, Jennings asked: "Does setting fire to private family dwelling prove jurisdiction element affecting interstate commerce as Jones requires?" He then argued that his trial court had erred in failing to instruct the jury that, in order to convict him of arson, it had to find "the building that was burned was 'being used in activity affecting interstate commerce.'" [ECF No. 15-2 at 11-12, Resp't Ex. 2, § 2241 habeas petition filed at Docket No. 01-cv-1194 (W.D. La.)].

On November 5, 2001, the Magistrate Judge to whom Jennings' case was referred issued a Report and Recommendation in which it was recommended that his § 2241 habeas petition be denied because Jennings was challenging his conviction, and therefore it was in actuality a § 2255 motion over which the court lacked jurisdiction. [ECF No. 15-3 at 11-18, Resp't Ex. 5, 11/5/2001 Report and Recommendation in Jennings v. United States, No. 1:01-cv-01194 (W.D. La.)]. In his Objections to the Report and Recommendation, Jennings argued, *inter alia*, that the court had jurisdiction to consider his Jones claim under § 2241 because under the holding in that case he is actually innocent of arson.

9

Jennings v. United States, No. 1:01-cv-01194 (W.D. La.) (ECF No. 9 at 3 "From the core language of Apprendi *and* Jones, *Petitioner filed all his jurisdictional claims herein as ingredients of an illegal conviction and sentence, which can be raised at any time during a proceedings*."; at 5 "§ 2255 contains a savings clause, which acts as a limited exception to the general rule to which jurisdictional defects and actual innocence claims for the arson conviction lacking all elements of the charge most certainly applies." (internal citations and quotations omitted) (available on PACER)).

On March 14, 2002, the Western District Court of Louisiana issued a decision in which it adopted the Report and Recommendation in full with supplemental analysis contained therein. The court concluded that Jennings had not demonstrated that his case fell within the "savings clause" of § 2255:

> Jennings has not satisfied the requirements of Section 2255's savings clause. In Jenning[s'] petition for relief, he makes no attempt to address the requirements of the savings clause. To the extent he attempts to satisfy his burden in his objections to the magistrate's report and recommendation, the court notes that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), has not been made retroactively applicable to cases on collateral review by the Supreme Court. See In re Tatum, 233 F.3d 857, 858 (5th Cir. 2000). *Further, Jennings has not satisfied the "actual innocence" requirement with the other cases cited in his submissions to this court. See id.*
>
> *Because Jennings has failed to satisfy the requirements of Section 2255's savings clause, his petition for relief is dismissed with prejudice in connection with the jurisdictional issue.* All other issues raised herein are dismissed without prejudice.

[ECF No. 15-3 at 22-23, Resp't Ex. 6, 3/14/2002 Judgment (emphasis added)].

Jennings challenged the Western District Court of Louisiana's decision in an appeal he filed with Fifth Circuit Court. On October 28, 2002, it affirmed the district court's decision.[3] The Supreme Court

---

[3] It is true, as Jennings points out, that in its decision the Fifth Circuit Court did not specifically discuss his contention that his case falls within § 2255's savings clause because he is "actually innocent" under Jones. If, however, Jennings believed that that court had overlooked that claim or argument, he could have filed a petition for a panel rehearing in which he pointed out the purported error. Fed.R.A.P. 40(a)(2) ("The petition must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition."). He did not.

denied Jennings' petition for writ of certiorari on March 3, 2003.  Jennings v. United States, No. 1:01-cv-01194, ECF Nos. 15 & 16 (W.D. La.).

On August 17, 2005, Jennings filed another § 2241 habeas petition in the Western District Court of Louisiana, in which he once again challenged the validity of his arson conviction in light of Jones. He asserted that a § 2255 motion is inadequate or ineffective based on Jones.  [ECF No. 15-4 at 2-22, Resp't Ex. 7, habeas petition and memorandum of law in Jennings v. Menifee, No. 05-1483 (W.D. La.)]. In a Report and Recommendation dated January 24, 2006, the Magistrate Judge found that Jennings was raising the same Jones claims that he had raised in the first § 2241 habeas petition.  The Magistrate Judge recommended that Jennings' § 2241 petition be dismissed pursuant to 28 U.S.C. § 2244(a)[4] and as an abuse of the writ. [ECF No. 15-4 at 25-28, Resp't Ex. 8, 1/24/2006, Report and Recommendation]. The district court adopted the Report and Recommendation and dismissed the § 2241 petition with prejudice.  [ECF No. 15-4 at 30, Resp't Ex. 9, 4/24/06 Judgment].

On January 16, 2007, the Fifth Circuit Court affirmed the district court's decision.  It held:

> Jennings challenges his arson conviction under Jones v. United States, 529 U.S. 848 (2000).  He argues that the issue in his current petition is whether he was convicted of a nonexistent offense under Jones.  He posits that he did not raise this same issue in his prior petition, where, he asserts, he claimed that the district court improperly instructed the jury.
> *Based on our review of the record and Jennings's pleadings in his prior petition, both in the district court and on appeal, we conclude that Jennings raised the same challenge to his conviction based on the holding in Jones and the alleged lack of an interstate commerce element to his offense.*  This district court did not err by holding that Jennings's instant petition fails to raise a new issue and is an abuse of the writ.  See U.S.C. § 2241(a); United States v. Tubwell, 37 F.3d 175, 177-78 (5th Cir. 1994).

---

[4]      28 U.S.C. § 2244(a) provides:  "No circuit or district judge shall be required to entertain an application for writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for writ of habeas corpus, except as provided in section 2255."  See also Queen v. Miner, 530 F.3d 253, 255 (3d Cir. 2008) (per curiam) (affirming the district court's dismissal of a federal prisoner's habeas petition pursuant to 28 U.S.C. § 2244(a) because "the issues raised in [the petitioner's] § 2241 petition either had been, or could have been, decided in his previous habeas action.").

11

Jennings v. Menifee, 214 F.App'x 406, 407 (5th Cir. 2007) (emphasis added). The Supreme Court denied Jennings' petition for writ of certiorari on May 14, 2007. Jennings v. Menifee, 550 U.S. 950 (2007).

In his instant petition, Jennings argues once again that his arson conviction should be vacated based on the Supreme Court's decision in Jones.[5] He contends that in accordance with Dorsainvil, he may pursue his request for habeas relief under § 2241. Respondent counters that Jennings is not entitled to relief under § 2241 because he cannot satisfy his burden of establishing that the decision in Jones renders him "actually innocent" of arson under § 844(i). According to Respondent, Jones did not decriminalize Jennings' act of firebombing Gore's home at 5801 Brush Road because Jennings and his co-conspirators sold illegal drugs out of the basement of that home and, therefore, it was used in interstate commerce and was not merely a private residence.

### C. Discussion

Both parties agree that the issue before this Court is whether Jennings has met Dorsainvil's second factor: whether he is "actually innocent" of arson within the meaning of § 844(i) as interpreted by the Supreme Court in Jones. Importantly, it is Jennings' burden to establish his "actual innocence" by "demonstrat[ing] that, *in light of all the evidence [now before this Court], it is more likely than not that no reasonable juror would have convicted him*" of arson in violation of § 844(i) because Gore's home

---

[5] Respondent initially argued, *inter alia*, that "[t]he Petition should be dismissed because … [Jennings] has raised the Jones issue in several other petitions, and all of them have been denied." [ECF No. 15 at 13]. This Court agreed with Respondent and issued a decision dismissing the petition under § 2244(a) and as an abuse of the writ. [ECF No. 29]. Jennings filed an appeal with the Third Circuit Court, which subsequently remanded the case for unrelated reasons. [ECF No. 38]. After the remand, Jennings filed a memorandum [ECF No. 41] in which he contends that this case should not be dismissed for abuse of the writ or under § 2244(a) because his claim of innocence under Jones purportedly was not decided on the merits by the Western District Court of Louisiana and the Fifth Circuit Court. The Court does not necessarily agree with Jennings' contention, but because Respondent does not challenge it in his post-remand filings, the Court will consider on the merits his claim that he is actually innocent under Jones.

was not "used in interstate ... commerce or in any activity affecting interstate ... commerce" (*i.e.*, was not used as a location to distribute illegal drugs).[6] Bousley v. United States, 523 U.S. 614, 623 (1998). See, e.g., Brian R. Means, FEDERAL HABEAS MANUAL § 1:29 (June 2012).[7] The Court must consider all available evidence in making its determination. Id. at 623-24 ("[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. In other words, the Government is not limited to the existing [trial] record to rebut any showing that petitioner might make."). See also Davies, 394 F.3d at 196.

In an effort to satisfy his burden, Jennings points to the fact that Gore, who was tried separately from Jennings and the other co-defendants, was acquitted of the crime of making a house available for drug distribution, in violation of 21 U.S.C. § 856(a)(2). The Court agrees with Respondent that that fact alone does not establish that it is now more likely than not that no reasonable juror could convict Jennings of arson. Jennings does not provide any persuasive rebuttal to Respondent's points that: (1) "the trial record in Gore's case establishes that Gore did not contest the fact that his house was used for [illegal drug distribution activity], but instead claimed that he had been forced into this arrangement by Anthony Brown, and he did not voluntarily make [his home] available for this purpose."; and,

---

[6] Jennings has not directed the Court to any case in which a home also used for illegal drug sales was determined to fall outside the ambit of § 844(i). In contrast to this case, in those cases in which a petitioner has been able to proceed under § 2241 on a claim of actual innocence under Jones, he has been able to establish that the private residence set afire was not also used in any interstate commerce. Martin v. Perez, 319 F.3d 799, 804 (6th Cir. 2004) (rejecting the Government's contention that the private residence that the petitioner had bombed was "used in" interstate commerce because it was owned by a woman who had rented it to her son, noting "there is no evidence that the house was actually rented to [the son] through an arm's length transaction."); United States v. Prevatte, 300 F.3d 792, 802 (7th Cir. 2002) (accepting the petitioner's argument that he was entitled to proceed under § 2241 because the only interstate connection established was the injury to a home that received interstate natural gas and Jones held that a private residence that received interstate natural gas was not "used" in commerce for purposes of § 844(i). See also Davis, 394 F.3d at 191 (§ 2255 case in which the court accepted the petitioner's argument that he was "actually innocent" of arson because the church building he burned was no more actively used for commercial purposes than was the residential home in Jones).

[7] Although Bousley was decided in the context of a § 2255 motion, courts have held that the same "actual innocence" test applies where, as here, the petitioner seeks relief under § 2241 due to the unavailability of the § 2255 remedy. See, e.g., Martin, 319 F.3d at 804 (applying Bousley's "actual innocence" definition to determine whether a petitioner was entitled to relief under § 2241 because he was innocent of arson under Jones).

(2) "Gore testified that he was coerced into allowing them to use his basement, and called several witnesses who claimed that they saw Brown threaten Gore." [ECF No. 48 at 6-7].

Jennings also relies upon the fact that the court at his trial purportedly failed to instruct the jury that, in order to convict him of arson, it had to determine that Gore's home was "*used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce*," 18 U.S.C. § 844(i). This allegation does not assist Jennings' case because it is not relevant to whether he has satisfied his present burden of demonstrating his "actual innocence." The issue in this case is not whether Jennings' jury was correctly charged back in 1991 (which is a claim that he could have raised on direct review). Rather, the issue is whether Jennings has demonstrated that, in light of all of the evidence, it is more likely than not that no reasonable juror would convict him of arson under § 844(i) as that statute has been interpreted by the Supreme Court in Jones. Bousley, 523 U.S. at 623.

To counter Jennings' contention that no reasonable juror could conclude that Gore's house was used as a location to sell drugs, Respondent cites to evidence that was introduced at Jennings' own trial. Fire Marshal Renald Pelszynski of the Philadelphia Fire Marshal's Office testified that he responded to a report of a fire at Gore's house on December 29, 1988. Pelszynski noticed that the side door to the basement was damaged, consistent with forcible entry. He found three "Molotov cocktails" in the basement area, one of which did significant damage to the area underneath the stairwells in the rear of the basement, and noted that the basement stairwell area was seriously damaged despite the fact that a can of kerosene near the area did not ignite. Pelszynski stated that he interviewed Gore, who told him that he heard a noise that was consistent with someone kicking in the basement door, and saw a black male running away from the house. Gore told him that "he had been approached by Jamaicans who were attempting to coerce him into selling drugs or getting involved in drug trafficking and he was resisting their efforts." [ECF No. 49 at 26-33].

14

Jennings' co-conspirator, Anthony Brown, testified that in the fall of 1988, he and Jennings decided that it was getting too dangerous to sell crack on the street. Brown stated that he approached Gore, also known as "Reds," about using his basement for drug sales. According to Brown, Gore agreed to let them sell drugs out of his basement in exchange for a payment of approximately $200 per week. [ECF No. 49 at 2-4, 7-9]. Brown explained that they used a three-person team to make the sales: one person would sell the drugs through an opening in Gore's basement door, while two people would stay outside keeping watch and directing customers to the door. [ECF No. 49 at 7-8].

Brown testified that he was arrested in November 1988 on a gun charge, about one or two months after they began using Gore's house to distribute their drugs. [ECF No. 49 at 7-8]. He stated that while he was in prison, Jennings visited him and told him:

> "Reds" said he couldn't sell out of his house no more. So he [Jennings] was going to burn it down because he went over there and asked "Reds" could he sell out of his house. He said, "Well, if I can't sell any Crack out of there I am going to burn it down." So that is what he did or tried to do.

[ECF No. 49 at 9].

Another co-conspirator, Charles Winfrey, a seller in the organization, testified that he began selling crack on the street on Brush Road, and then later moved inside and sold crack from "Reds'" (Gore's) basement. Similar to Brown, Winfrey testified that they sold drugs from the basement on a daily basis using a three-person team. Winfrey also stated that he was with Jennings and other members of the group when they shot at Gore's house and used bottles filled with gasoline to set the house on fire. Winfrey said that Jennings told him to shoot at the house. It was Winfrey's understanding that they attacked the house because there was "[s]ome confusion" with Gore about continuing to use his house to sell drugs. Winfrey was not familiar with the exact arrangement the group had with Gore, but said that he knew that Gore had been paid money and/or drugs for the use of his home. [ECF No. 49 at 10-16].

15

In light of all of the above-cited evidence, the Court must conclude that Jennings has failed to satisfy his burden of demonstrating that it is more likely than not that no reasonable juror could convict him of arson. There is evidence from which a reasonable juror could conclude that that Gore's home was used as a location to sell illegal drugs and, therefore, was not solely a private residence used only for everyday family living.

In conclusion, because Jennings has not shown that he is actually innocent of his arson conviction under 18 U.S.C. § 844(i), his request for habeas relief should be denied.

### D. Certificate of Appealability

28 U.S.C. § 2253 codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B). As such, this Court makes no certificate of appealability determination in this matter.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


January 7, 2013 /s/ Susan Paradise Baxter
                                                                                 SUSAN PARADISE BAXTER
                                                                                 United States Magistrate Judge


cc:    The Honorable Sean J. McLaughlin
       United States District Judge